**AFFIRMED; Opinion Filed January 28, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01382-CR

### JAKALE ERRION CHANDLER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court
Collin County, Texas
Trial Court Cause No. 199-81464-2013**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Stoddart

A jury convicted Jakale Errion Chandler of forgery, and the trial court sentenced him to five years' imprisonment. In a single issue, Chandler argues the trial court erred by admitting phone records as business records without sufficient authentication and because the records were created in anticipation of litigation. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Megan Wages testified that she and her boyfriend decided to sell her iPhone. Her boyfriend posted an ad on Craigslist to sell the phone, and found a potential buyer. After an exchange of text messages, they agreed to meet the buyer at a Walmart in Plano. When they arrived, the buyer looked at the phone and then said he was going to an ATM to get money. He returned with eleven $20 bills. Wages's boyfriend counted the money and the buyer left with the

phone. Wages testified she and her boyfriend then shopped for groceries at the Walmart. When they went to pay for their purchases, Wages's boyfriend realized the money was fake.

The following day, Wages went to the Plano Police Department, reported the incident, and gave the counterfeit bills to the police. A report was taken, and Plano Police Detective Xavier Badillo, an investigator in the financial crimes unit, was assigned to the case. Badillo examined the money and determined it was counterfeit. As part of his normal protocol in counterfeit cases, Badillo notified the Secret Service.

Ryan Turner, a Secret Service Agent who is a criminal investigator for cases involving counterfeit currency, confirmed the bills Wages received were counterfeit. Based upon information received from Badillo, Turner later created a photo lineup and showed it to Wages. Wages selected a photo from the lineup, and said she was about 75-80 percent sure the photo she selected was the person who gave the counterfeit bills to her. She said she "remembered distinct facial features." At trial, Wages identified Chandler as the person who passed the counterfeit money.

During his investigation, Badillo learned that Wages and the purported buyer made arrangements for the sale of the phone through a series of text messages. Wages did not know the buyer's name but provided Badillo with the cell phone number the buyer used. Badillo sought a court order to obtain the corresponding cell phone records. Badillo obtained the order and sent it to MetroPCS. MetroPCS then sent records associated with the phone number to Badillo. MetroPCS also sent the subscriber's name and address to Badillo. The subscriber's name associated with the account was Ben Henderson. However, after determining the subscriber address on file with MetroPCS was not a real address, Badilla surmised Ben Henderson was not a real person.

Badillo looked at other text conversations in the MetroPCS records and determined the person using the phone number was named "Jakale." Badillo noticed several text exchanges between "Jakale" and a person named "Bianca." Badillo searched the Plano Police Department's records and found a record containing both names. From this he ascertained Jakale's last name to be Chandler. Also included in the MetroPCS records was a text message referencing "JAKALE CHANDLER." Badillo determined Jakale Chandler was the person who provided counterfeit money to Wages.

At trial, the State attempted to admit documents received from MetroPCS as State's Exhibits 1 and 1A. State's Exhibits 1 and 1A were described as "limited copies of what [Badillo] got from MetroPCS in response to this investigation." The State clarified that "limited copies" meant that Badillo did not give the entire response from MetroPCS to the district attorney's office. Instead, Badillo turned over only those portions of the MetroPCS records he thought were relevant to the investigation. Badillo explained that some of the records provided by MetroPCS were "jumbled up" in a spreadsheet format and he sorted them by cell phone number "to keep the conversations, um, connected; to keep, you know, one number to another number without having different numbers entered in between, so that the conversation makes sense." Badillo agreed the records in State's Exhibits 1 and 1A were not in the same format as they were when he received them from MetroPCS.

LAW & ANALYSIS

At trial, Chandler objected to State's Exhibits 1 and 1A on the grounds that the business records affidavit was not in the form required by rule of evidence 902, and the records had been altered. Originally, the trial court sustained the objection. After additional discussion between the lawyers and the trial court, the judge overruled the objection and admitted Exhibit 1 for all

–3–

purposes and Exhibit 1A for record purposes only. Badillo then testified about the contents of Exhibit 1 without further objection.

To preserve a complaint for appellate review, a party must make a timely and specific request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. TEX. R. APP. P. 33.1(a). An objection must be made each time the potentially inadmissible evidence is offered unless a party obtains a running objection or requests a hearing outside the presence of a jury. *See Haley v. State*, 173 S.W.3d 510, 516–17 (Tex. Crim. App. 2005); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Although the lawyers and trial court had a lengthy conversation about the admissibility of State's Exhibits 1 and 1A, which included discussion of the contents of each exhibit, the record does not show the discussion occurred outside the presence of the jury. Because Chandler did not object to Badillo's subsequent testimony, did not obtain a running objection, and did not request a hearing outside the presence of the jury, we conclude Chandler failed to preserve his complaint for appeal.

Even if we concluded the trial court erred by admitting State's Exhibits 1 and 1A, Chandler has failed to show the alleged erroneous admission of the evidence affected his substantial rights. *See* TEX. R. APP. P. 44.2(b). The improper admission of evidence is non-constitutional error that we disregard unless the error affected an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Under rule 44.2, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining a defendant's conviction or punishment. *See Garcia*, 126 S.W.3d at 927; *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

Badillo's testimony showed he used the MetroPCS records to identify Chandler as the person who passed the counterfeit bills. However, the records were not the only evidence to

prove identity. Wages identified Chandler at trial in the jury's presence. In light of Wages's identification of Chandler, who she described as having "distinct facial features," and the fact that the jury knew what was contained in the phone records, we conclude the admission of the exhibits would not have substantially swayed the jury to find Chandler guilty. Thus, we conclude the admission did not affect Chandler's substantial rights. We overrule Chandler's sole issue.

CONCLUSION

We affirm the trial court's judgment.

/ Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131382F.U05

–5–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JAKALE ERRION CHANDLER, Appellant

No. 05-13-01382-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-81464-2013.
Opinion delivered by Justice Stoddart.
Justices Francis and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of January, 2015.